LEWIS LEVISON & CO. *v.* HARRIS ABRAHAMS *et al.*
AND
FANNY ABRAHAMS by next friend, etc., *v.* LEWIS LEVISON & CO. *et al.*

HOMESTEAD. *Abandonment.* Under the homestead acts before 1874, the homestead was a possessory right dependent upon occupation, and was lost, even by a married woman, by voluntary abandonment.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Chancellor.

JOHN RUHM for complainants.

H. H. HARRISON and D. F. WILKIN for defendants.

COOKE, J., delivered the opinion of the court.

On April 1, 1871, one Samuel Abrahams purchased a house and lot in Nashville of one Bloomstein, and took a deed therefor, Bloomstein retaining a lien upon the same for $500 of the purchase money. On October 28, 1871, said Samuel Abrahams sold and conveyed said lot and premises to his brother, Harris Abrahams, subject to said lien of Bloomstein for the unpaid purchase money. On December 1, 1876, Harris Abrahams executed a mortgage deed upon said property to Levison & Co. to secure an indebtedness to them of about $1,500. On November 8, 1877,

Harris Abrahams bankrupted, and was discharged in bankruptcy on January 31, 1878.

In February, 1878, Levison & Co. filed their bill in the chancery court against Harris Abrahams and his assignee in bankruptcy to foreclose said mortgage, and obtained a decree for the sale of said property for the satisfaction of said debt secured by the mortgage on May —, 1878. And in July, 1878, Fanny Abrahams, the wife of Samuel Abrahams, by her next friend, one Cohen, filed her bill seeking to set up a right of homestead in said house and lot, and enjoining the sale under said decree, upon the allegation that at the time of the conveyance of said house and lot by her husband to Harris Abrahams, they, complainant and husband, together with their children, were occupying said house and premises as a homestead, and that she did not join in the deed.

The answer does not admit that they were occupying said house and lot as a homstead at the time of said conveyance, and requires proof, but insists that if they were so occupying it at that time they voluntarily abandoned it for more than six years before the filing of the bill, without any intention of returning to it. The testimony, which is by two witnesses for the complainant, one Mrs. Levy, and Cohen, the next friend, shows the following state of facts: That the house and lot was situated in the suburbs of Nashville, in a part of the city where property was rapidly depreciating; that Samuel Abrahams was engaged in some kind of merchandising in which his wife, the complainant, assisted him; that

the house in question was constructed as a store house and residence, and was so occupied and used by them; that they were living in a part of the house at the time of the sale to Harris Abrahams; that they, or the husband, Samuel Abrahams, immediately after the sale rented the house and lot from his brother Harris, and continued to live in the house and carry on his small business, in connection with or assisted by complainant, until the first of the year 1874, when they left it, because, as stated by Samuel at the time, he could not afford to pay the amount of rent his brother Harris was charging him for it; that the locality in which the lot was situate was not an eligible situation to do business; that shortly after leaving the house and premises in question they rented a house on Broad street, near Summer, a mile or more from the premises in question, where they have been residing and carrying on the mercantile business ever since, remaining in the same house in which they lived and conducted their business for over four years, and then removing to another house a few doors distant on the same street, where they continue to reside and carry on their mercantile business as before, and where they now have a drug store, and on which house and premises they have or had at the time of taking the testimony a three years' lease. The witness, Mrs. Levy, testifies that she was a near neighbor to the complainant when the property was sold, and continued so until in 1873, when she left Nashville; that one day she called and found Mrs. Abrahams much distressed, and when asked the

reason, she told the witness that her husband had sold the only home she had, and had done so without her knowledge or consent; that she does not know the reason she left the place; that she, witness, left Nashville in 1873, and when she returned in 1876, she found them living on Broad street, near Summer; that after her return complainant held and said her husband had sold the Cedar street lot, her home.

The other witness, Cohen, testifies that complainant did not know the property was sold until in 1874, about a month before they moved from it, and did not know it was rented; that she came to him, and asked what she must do, and he told her that she could do nothing but move; that she claimed and treated the place as her home on all occasions. On cross examination he admits that all he knows about it is what he heard Mrs. Abrahams say at the time she came to him, and that what he means by saying that she did not know the property was sold until a month before they moved, is, that she never told him of it before, but cannot swear that she did not know it, and that the first time in his life that he heard that Mrs. Abrahams claimed a right of homestead in this property was at the time this bill was filed.

The testimony of these witnesses as to the statements and declarations of the complainant was excepted to by respondents when the depositions were taken, and is insisted upon here, but as no action of the chancellor appears to have been involved upon the exceptions at the hearing, they are considered as waived.

Levison & Co. v. Abrahams.

But taken as competent, the evidence simply shows that the complainant was distressed at the fact that her husband had sold the only home she had without her knowledge or consent, and as Cohen states, asked his advice as to what she should do about it. There is not a particle of testimony to show that at the time she *left* the property she did not do so willingly, or that she then had any purpose of ever returning to occupy it as a homestead, or asserted any claim to it. There is not even an allegation in the bill to that effect, but the whole equity alleged is that they were living on the property as their home at the time of the sale, and that she did not join in the conveyance, and that they have not acquired any other homestead since.

As the law was at the time of these transactions the homestead was a possessory right, dependent upon occupation, and that right, even of a married woman, was lost by voluntary abandoment: *Henry* v. *Wilson*, 9 Lea, 178; *Roach* v. *Hacker*, 2 Lea, 634; *Jarman* v. *Jarman*, 4 Lea, 675; *Wade* v. *Wade*, 2 Legal Rep., 10; Code, 2114a.

All the facts and circumstances of this case, when taken together, we think, show too plain for question a voluntary abandonment by the complainant, as well as her husband and the family, of this property as a home, without any intention or expectation of returning to occupy it. They had only owned and occupied it at the time it was sold by the husband to Harris Abrahams, his brother, for a period of less than three months. There was $500 of the purchase

money still unpaid, and a lien upon it at the time of the sale. The complainant and her husband were merchants, she assisting him in that business. The property was situated in an undesirable locality, and was fast depreciating in value. He gave for it $3,500, sold it for $2,700, and it has been sold in these proceedings, after repeated and extraordinary efforts to obtain a better price, for $1,150. It was undesirable as a location for carrying on the business in which they were engaged, and which, as very clearly appears, was small and unprofitable. They or the husband was either unable or unwilling to pay the rent he was charged for it. It was desirable, and they did change this locality for a more populous and more eligible business locality in the city, where they have continued ever since, and where their business seems to have improved, while by her statement to her next friend, Cohen, she did not know it was sold, or that they were paying rent for it until a month before they left it; yet by the testimony of Mrs. Levy, and by all the circumstances in the case, she did know it. Possession was given, as proven by Cohen, to Harris Abrahams on January 1, 1873, and the husband rented it from him, and contiuued to occupy it as tenant until in 1874, and then left it, according to this witness, because he could not pay the rent charged him for it, although the proof shows he paid a higher rent for the property to which he removed, and in which he carried on business on Broad street. The complainant not only acquiesced for nearly seven years after the sale without ever having asserted to

a human being, so far as this record shows, that she had or claimed a right of homestead in this property, but stood by and saw it claimed and owned by Harris Abrahams for five years, and then mortgaged to third parties for its full value, saw Harris Abrahams become bankrupt, and a bill filed by the mortgagee to foreclose the mortgage, and a decree to sell it, when she suddenly, for the first time, informs her next friend, Cohen, that she has a homestead right in this property, and this bill is filed to assert it; and when this is done, they or the husband has a three years' lease on the property where they are living and doing business, showing no intention whatever to return to or occupy the premises in question, and being wholly unable to produce any person as a witness to prove that she had, during all these years, set up any claim to a homestead interest in this property, or that she had not abandoned it voluntarily and in the interest of her and her husband's business, and with all these facts and circumstances conclusively, as we think, showing that she did neither offer herself or her husband to prove that her abandonment of the property was not voluntary, or that she ever claimed or asserted in any manner that she had a right of homestead in it until the time of filing her bill in this case, and which in the light of all the facts and circumstances disclosed in this record, we think is decidedly to her credit. We have no doubt but that her abandoment of the property was voluntary, and to sustain her claim now to a homestead would be, as was said in the case of *Roach* v.

*Hacker*, above cited, "to declare judicially, what the Legislature has recently done by statute, that the homestead right shall be independent of the actual occupancy of the premises.

The chancellor held otherwise, and the Referees have reported that his decree should be affirmed. The exceptiont to the report will be sustained, the report set aside, the decree reversed, and the bill dismissed with costs.